CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

1/23/2026

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
    DEPUTY CLERK

IN THE UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 4:19-cr-00009 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| MICHAEL SHANE DEBAERE | ) | Chief United States District Judge |

## MEMORANDUM OPINION AND ORDER

By memorandum opinion and order entered August 27, 2025, the court denied defendant Michael Shane DeBaere's motion for early termination of supervised release and motion to compel production of the probation office's supervision report.  (Dkt. No. 40 (denying Dkt. Nos. 32, 38).)  Since that time, DeBaere has filed numerous documents related to that initial request for relief.  First, in September 2025, the Clerk received from DeBaere two additional motions.  In the first, he challenges the court's August 27 opinion and order, asking the court to "alter or amend" that order.  (Dkt. No. 41.)  In the second, he asks for leave to exceed the page limit for his supporting memorandum.  (Dkt. No. 42.)

Then, in December 2025, he filed a series of documents.  These included: several documents titled as "Notices of Non-Opposition," in which he pointed out that the United States had not responded to his motion to alter or amend judgment and argued that its failure to respond should be treated as non-opposition (Dkt. Nos. 44, 46); documents the Clerk docketed as a supplemental memorandum and second supplemental memorandum in support of his motion to alter judgment (Dkt. Nos. 45, 47); a request for ruling (Dkt. No. 46); and a motion to expedite decision (Dkt. No. 48), received by the Clerk on December 11, 2015, in which he requested a removal of the several special conditions of supervised release.  These included a removal of a condition requiring periodic polygraph testing, and he requested a ruling on that or a "stay" prior

to a scheduled polygraph test on December 16, 2026.  (Dkt. No. 48.)

The court has considered all DeBaere's submissions.  For the reasons discussed herein, the court will deny his motion to file his first memorandum, and the court will not consider that document.  Despite the failure of the United States to respond to his initial motion to alter or amend, the court also will deny his motion to alter or amend.  As for his December motions, the motion for ruling (Dkt. No. 46) will be denied as moot.  The document docketed as a "Second Supplemental Memorandum" by the Clerk (Dkt. No. 47) appears to be instead a motion for leave to file his supplemental memorandum (Dkt. No. 45).  So, the Clerk will be directed to correct that docket entry, and the court will grant that motion and consider his supplemental memorandum, which is already on the docket.  The court also will direct that the supplemental memorandum (Dkt. No. 48), which again requests early termination of his release term, be re-docketed as a new motion seeking that relief.  In it, he asks that the court analyze his request under the amended sentencing guidelines, effective November 1, 2025, including U.S.S.G. § 5D1.4.  Separately, DeBaere moves the court to delete special conditions E & F (Dkt. No. 48), which require sex offender treatment and permit polygraph examinations.[1]  The court will require the United States to respond to those two motions.

---

[1]  Those Special Conditions state:

> E. The defendant shall submit to polygraph or any other court approved testing to monitor the defendant's compliance while on supervision.

> F. The defendant shall submit to an evaluation/risk assessment by a qualified mental health professional approved by the probation officer, who is experienced in the treatment of sexual offenders. The evaluation may include psychological and physiological testing (i.e. plethysmograph exams). The defendant shall take all medications reasonably related to his or her condition; complete all treatment recommendations, which may include physiological testing (i.e. polygraph exams), and abide by all rules, requirements and conditions imposed by the treatment provider until discharged from treatment by the provider.

(Mem. Op. & Order 4, 12–13, 19, Dkt. No. 29.)

## I. BACKGROUND

The background of this case is set forth in the court's prior opinions and orders denying DeBaere's requests for early termination of his fifteen-year supervised release term (Dkt. Nos. 31, 40), and the court will not repeat that background here. In his motion to alter or amend, DeBaere contends that the court's most recent denial "overlooked critical factual matters, misapprehended matters of law, and failed to properly consider the relevant 18 U.S.C. § 3553(a) factors, which, if corrected, would reasonably alter the outcome." (Mot. 2, Dkt. No. 41.) He asks for the court to reconsider its order pursuant to its "inherent authority to correct interlocutory orders" and states that the motion is "guided by the principles of Federal Rules of Civil Procedure 59(e) and 60(b)." (Mem. Supp. of Mot. to Alter or Am. ("Mem.") 1, Dkt. No. 43.)

The court has reviewed these alleged errors and finds that most do not warrant any discussion, but it will discuss a few briefly herein. To the extent its prior order was unclear, it clarifies its reasoning herein. The court nonetheless stands by its prior decision to deny the requested relief for the reasons discussed below. As DeBaere suggests it should, however, the court will treat his December 2025 filings as a new request for early termination of supervised release and for consideration of that request under the U.S. Sentencing Guidelines, as revised in November 2025.

## II. DISCUSSION

### A. Motion for Leave to File

DeBaere's first motion asks for permission to file his 82-page typed memorandum, which fleshes out the numerous assignments of error listed in his motion. He seeks leave to file it because of its excessive length. The court has read through the memorandum and if the only

issue were length, it would permit it to be filed and would consider the arguments therein.
However, a review of the sources it cites, even in the first twenty pages, readily reveals that it
suffers from the same problems as DeBaere's earlier filings, which the court identified in detail
in its last opinion.  Specifically, DeBaere cites to some fictitious sources, cites to some
improperly named sources, and includes quotations that do not exist anywhere in the cited
sources.[2]

The court does not know whether these repeated mischaracterizations and outright
fabrications—which generally appear to strongly support DeBaere's arguments—are the result of
his use of generative AI or instead a more nefarious attempt to mislead the court.  *See generally
Kruglyak v. Home Depot U.S.A., Inc.*, 774 F. Supp. 3d 767, 770-71 (W.D. Va. 2025) (discussing
the shortcomings of generative AI and noting that it is "widely known that such platforms
sometimes 'hallucinate,'" which in the legal research context "can include the generation of
fictitious case cites and misrepresentations of case summaries of holdings").  The court's prior
opinion noted various similar types of issues with citations and authorities relied upon by
DeBaere and warned him of the possibility of sanctions for such conduct.  (Mem. Op. 5 n.6; *see*

---

[2] By way of example only, on page 9, DeBaere includes a lengthy quotation attributed to the Third
Circuit's decision in *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020), but the quoted material is not in that
case.  Similarly, many of the citations on page 11 are not to existing cases (or at least not to cases with the citations
given), and the quoted language does not appear in any other case that the court could find.  In the one case on that
page with a correct citation, the quoted language does not appear.  DeBaere also cites to *United States v. Emmett*,
749 F.3d 817 (9th Cir. 2014), across several pages.  (Mem. 18–19.)  While he correctly describes that the *Emmett*
court vacated and remanded a district court's decision denying early termination of supervised release, he states that
the court did so because the lower court erroneously focused "almost exclusively" on the nature of the offense
conduct, rather than on the defendant's post-release compliance and rehabilitation.  In fact, though, none of that
analysis appears in *Emmett*.  Instead, the denial of early termination was vacated and remanded simply because the
district court did not adequately explain its sentencing decision, not because of the lower court's failure to focus on
any particular factor.  Moreover, the entire sentence DeBaere includes as a quotation is nowhere in that opinion.  His
mischaracterization of *Emmett* is particularly egregious because this court discussed *Emmett* in the text of its last
opinion and discussed its very basic holding.  (*See* Mem. Op. 8.)
    Yet another example of a mischaracterization appears in the paragraph after discussing *Emmett* where
DeBaere attributes the quote, "static rehashing of past severity," to a different case.  (Mem. 19.)  The quotation
appears nowhere in that decision or in any other federal case or secondary source that the court could locate in
Westlaw.

*also id.* at 6–8 & nn.7–8 (discussing various issues with citations and authorities relied upon by DeBaere).)[3]  The court will not wade through eighty pages of citations and quotations to determine which ones are accurate, which ones misrepresent and mischaracterize actual cases, which ones comes from real, but miscited sources, and which ones are entirely fictional.  It is not only misleading to the court at the outset, but ultimately a waste of the court's time and resources, trying to sort through the many fictitious citations contained within his filing to find a kernel of support for his arguments.

Instead, the court will deny DeBaere's motion for leave to file that document.  The court nonetheless has considered the basic contours of his arguments, which are contained within his motion.  DeBaere is further warned that if he files any further documents and attributes quotations to cases that do not contain those quotations, provides erroneous citations or cites to cases that do not exist, or mischaracterizes the holding or reasoning of cases, the court may impose sanctions, including but not limited to striking such documents, refusing to consider them, and/or imposing monetary sanctions.

## B.  Motion to Alter or Amend

In his motion asking the court to alter or amend his judgment, DeBaere relies on the court's "inherent authority" to reconsider its ruling, but he also cites to Federal Rules of Civil Procedure 59(e) and 60(b).  The Fourth Circuit has held that Rule 59(e) Rule does not apply to motions that are criminal in nature, *United States v. Goodwyn*, 596 F.3d 233, 235 n.* (4th Cir. 2010), and the same reasoning would apply to Rule 60(b).

---

[3]  The court referred to Federal Rule of Civil Procedure 11 in its prior opinion but recognizes that many courts have held or suggested that Rule 11 is not applicable in criminal cases, *cf. United States v. White*, 980 F.2d 836, 843 (2d Cir. 1992).  Nonetheless, the court has an inherent power to impose sanctions in a criminal case. *Chambers v. Nasco*, 501 U.S. 32, 46–49 (1991).  *See also Orr v. United States*, No. 1:03 CR 35-M, 2008 WL 4186935, at *1 (N.D. Miss. Sept. 8, 2008) (identifying three sources for a district court's power to impose sanctions and concluding that a court's inherent power is the only proper vehicle for imposing a sanction against a pro se party in a criminal case).

Nonetheless, many courts "typically evaluate" a motion to reconsider in a criminal case "under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)," which requires (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in the controlling law; or (4) a manifest injustice. *See, e.g.*, *United States v. Peters*, 856 F. App'x 230, 236 (11th Cir. 2021) (affirming district court's denial of motion to reconsider earlier denial of motion to terminate supervised release because it "did not make previously unavailable arguments or rely on new evidence"). Especially with DeBaere's arguments focusing on "errors of law" or "manifest injustice," the court finds it appropriate to do the same, and will apply a type of Rule 59(e) standard to his request. For the reasons set forth herein, the court DENIES DeBaere's motion to alter or amend judgment.[4] The court discusses its reasons briefly below but also incorporates by reference its most recent opinion.

As to his more recent requests that: (1) the court evaluate anew a request for early termination of his supervised release term pursuant to the revised U.S. Sentencing Guidelines,[5] and (2) alternatively, that it modify certain conditions of his supervised release term, the court will obtain a response from the United States before ruling on those requests.

## C. Alleged Errors

The decision about whether to reduce a supervised release term is within the discretion of the court, *United States v. Pregent*, 190 F.3d 279, 282 (4th Cir. 1999), and the court abuses that discretion only if "it acts arbitrarily or irrationally, fails to consider judicially recognized factors

---

[4] In the context of compassionate-release motions (where there is currently no limit on the number of such motions a defendant may file), the Fourth Circuit has instructed district courts to treat such a motion as a "new motion for compassionate release." *United States v. Hedspeth*, No. 22-6943, 2023 WL 7124547, at *1 (4th Cir. Oct. 30, 2023). Because DeBaere's arguments here refer to specific alleged errors in the court's prior opinion, the court declines to treat his September 2025 motion as a new motion for early termination of supervised release and believes it is more properly treated as a type of motion to reconsider.

[5] Unlike his September motion, at least one of his December 2025 filings suggests that the court could "construe this filing as a new motion for early termination." (Dkt. No. 45, at 6–7.)

constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law," *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (internal quotation marks omitted).  Having reviewed its prior decisions on the issue, the court is satisfied that it appropriately weighed the correct sentencing factors, did not act arbitrarily, and did not rely on erroneous factual or legal premises or commit an error of law.  It continues to believe that termination of DeBaere's supervised release term at the time of its decision was not warranted.[6]

At the outset, the court rejects DeBaere's arguments that his motion to alter or amend judgment must be granted because the United States failed to file a timely opposition to it.  First, it is not the practice in this district to require responses by the government to every pro se, post-judgment motion filed in a criminal case.  Instead, the court typically orders a response to such motions when it requires a response.  In any event, even if the court treated the failure to respond as an indication that the United States does not oppose the relief sought, that does not mean the court must grant it.  As just noted, the decision as to whether to terminate a supervised release term early or to modify terms of supervised release is a decision squarely within the court's discretion.  *Pregent*, 190 F.3d at 282.  The court is not bound in this circumstance by any recommendation made by, or position taken by, the United States.  *See, e.g.*, *United States v. Zoukis*, No. 22-6263, 2023 WL 8728601, at *1 (4th Cir. Dec. 19, 2023) (affirming order denying motion for early termination of supervised release even though government had no objection).  Thus, regardless of any response or non-response by the United States, the court is required to evaluate a request for early termination and reach its own decision.

In asking that the court revisit its prior decision, DeBaere asserts that the court's order contained numerous factual, legal, and analytical errors.  Most of his arguments, however, are

---

[6] As noted, the court will consider his request anew under the amended sentencing guidelines in the context of ruling on his latest motions after it has received a response from the United States.

simply disagreements with the result reached by the court or the weight the court attached to a particular fact or circumstance.  These alleged "errors" do not constitute the type of "clear error" referenced in Rule 59(e) and like standards.

For example, he insists that the court did not consider his current behavior or his progress while on release, but the court noted and discussed that compliance and progress and commended him for it.  (Mem. Op. 12–13, 14–15.)  It just did not believe that his progress weighed heavily enough to overcome the other factors that still called for him to be supervised.

He also believes the court should have assigned more weight to his demonstrated rehabilitation and his "substantial compliance" while on supervised release and should have given less weight to his original offense, to "inconclusive 2022 polygraphs," and to the probation officer's memorandum and generalized claims of risk based on sex offenders generally.  He argues that the court improperly analyzed the sentencing factor of avoiding unwarranted sentencing disparities, improperly comparing him to others who committed the same offense rather than on others with similar records who were granted termination.  But these again are challenges to the weight that the court assigned the relevant factors.  None of these alleged "errors" are errors of law or fact that constitute an abuse of discretion.  In short, nothing DeBaere has argued causes the court to question its prior decision.

DeBaere identifies two errors, however, that could constitute a mistake of fact or law, had the court made them, which it did not.  First, DeBaere contends that the court mistakenly identified his offense as possession of pornography, rather than accessing with intent to view under 18 U.S.C. § 2252A(a)(5)(B).  DeBaere is incorrect.

The court correctly identified his offense on the first page of its opinion.  (Mem. Op. 1, Dkt. No. 40.)  Elsewhere in discussing other cases, it referred to that statutory provision as being

the offense of possession of child pornography, (*id.* at 13–14), but that subdivision can be violated in either fashion (either by possessing or by accessing with intent to view).  And although it referred to him possessing images (*id.* at 11, 13), that language is contained within the PSR.  To the extent the opinion can be interpreted as reflecting that the court believed he had been convicted of possession, the court now clarifies that it understood then—and understands now—the offense of conviction.

DeBaere also insists that the court considered the "need for the sentence imposed to reflect the seriousness of the offense" under § 3553(a)(2)(A), a factor it is not permitted to consider under § 3583(e)(1).  DeBaere is correct that, when considering whether to terminate a term of supervised release early, only certain of the § 3553(a) factors are relevant, while others are not included in the list of factors to be considered.  18 U.S.C. § 3583(e).  In particular, the court is not to consider the kinds of sentences available, § 3553(a)(3), nor should it consider "the need for the sentence imposed to reflect the seriousness of offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A).  The court should consider, however, the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1), as well as the need for the sentence to deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities, § 3553(a)(2)(B)–(C), (a)(6).[7] The court's opinion several times referred to the "serious" nature of his criminal offense, but the nature and circumstances of the offense are a consideration that the court may—and must— consider.  To the extent the court's opinion can be read as being based on a consideration of § 3553(a)(2)(A), the court disavows any such reliance.  The court considered the significance of

---

[7] Notably, the court's memorandum opinion never expressly stated that it was considering the need for the sentence imposed to reflect the seriousness of the offense.  And in listing the factors that the court should consider, it did not include that factor.  (Mem. Op. 10.)

the offense in terms of the number of images and type of images involved, as well as in his admissions about his attraction to young girls, to reach the conclusion that a substantial term of supervised release was still needed. And it continues to believe that a longer term than what he had served as of August 2025, although without any known violations or problems, was required both to protect the public and to avoid unwarranted sentencing disparities, as it discussed in its opinions. Thus, neither of these purported "errors" require the court to reconsider or alter its prior ruling.

For the foregoing reasons, DeBaere's motion to alter or amend judgment will be denied.

**D.  December 2025 Motions**

The December 2025 motions are addressed in the order below. Succinctly summarized, the court will deny as moot his request for a ruling, will grant DeBaere leave to file a supplemental memorandum, which is more properly treated as a new motion requesting early termination, will deny his request for expedited relief as moot, and will take his requests for substantive relief under advisement and require the United States to respond before issuing any ruling.

### III.  CONCLUSION AND ORDER

For the reasons set forth herein and set forth in the court's August 27, 2025 Memorandum Opinion and Order, the court hereby ORDERS that:

1.    DaBaere's pro se motion for leave to exceed the page limit (Dkt. No. 42) is DENIED; and because of the many erroneous and misleading citations and quotations in his supporting memorandum, the court has not considered it; and

2.    if DeBaere files any future document with the court that attributes quotations to legal authorities that do not contain those quotations; provides erroneous citations;

10

cites to legal authorities, including cases, that do not exist; mischaracterizes the holding or reasoning of legal authorities; or engages in similar conduct that is misleading, the court may impose sanctions, including but not limited to striking such documents, refusing to consider them, and/or imposing monetary sanctions;

3.    DeBaere's pro se motion to alter or amend order denying early termination of supervised release (Dkt. No. 41) is DENIED;

4.    DeBaere's "request for a ruling" (Dkt. No. 46) IS DENIED AS MOOT because the court has now ruled on the motion to alter or amend judgment;

5.    DeBaere's pro se filing docketed as a "second supplemental memorandum" (Dkt. No. 47) is more properly docketed as DeBaere titled it, which is as a "Motion for Leave to File Supplemental Memorandum" (Dkt. No. 45); the Clerk is thus DIRECTED to change the docket text of Dkt. No. 47 to reflect the correct title; and the motion for leave to file (Dkt. No. 47) is GRANTED;

6.    The court construes DeBaere's supplemental memorandum (Dkt. No. 45) as also being a renewed motion for early termination of his supervised release term. Thus, the Clerk is DIRECTED to docket that motion again separately as a motion for early termination of supervised release;

7.    DeBaere's motion requesting a deletion of certain supervised release conditions (Dkt. No. 48) is DENIED IN PART and TAKEN UNDER ADVISEMENT IN PART. It is DENIED insofar as it seeks a stay or an expedited ruling on that motion to prevent a polygraph scheduled on a date in the past. It is TAKEN UNDER ADVISEMENT insofar as it requests modification and deletion of those two specific conditions; and

11

8.      Not later than twenty-one days after entry of this order, the United States shall file

a response to DeBaere's two remaining pending motions: his motion seeking early

termination of supervised release under the amended guidelines and his

alternative motion seeking a modification of the terms of his supervised release

(Dkt. No. 48).  If DeBaere wants to file any reply, he shall do so not later than

fourteen days after service of the response on him.

The Clerk is DIRECTED to send a copy of this memorandum opinion and order to Mr.

DeBaere, all counsel of record, and the United States Probation Office.  Additionally, the Clerk

shall provide Mr. DeBaere a copy of the updated public docket sheet.

Entered: January 23, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge